SCJ/RAZ:PWB/FTB
F. #2013R00813

UNITED STATES DISTRICT CO
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - X

UNITED STATES OF AMERICA     I N D I C T M E N T

    - against -     Cr. No. _____

CHIKWERE ONYEKWERE and
UCHECHI ONYEKWERE,

           Defendants.

- - - - - - - - - - X

(T. 18, U.S.C., §§ 982(a)(7),
1347, 1349, 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 42,
U.S.C., § 1320d-6)

THE GRAND JURY CHARGES:

INTRODUCTION

       At all times relevant to this Indictment, unless otherwise indicated:

I.     Background

    A.     Medicare Part C

       1.     The Medicare Program ("Medicare") was a federal health care program providing benefits to persons who were over the age of 65 or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services ("HHS"). Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.    The Medicare program was divided into different "parts."  "Part A" of the Medicare program covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies.  "Part B" of the Medicare program covered outpatient hospital services and professional services provided by physicians and other providers; it also covered durable medical equipment ("DME").

3.    "Part C" of the Medicare program -- which is also known as Medicare Advantage -- offered beneficiaries the opportunity to secure coverage for many of the same services that were provided by Parts A and B, in addition to certain mandatory and optional supplemental benefits.  Private companies ("Contractors") that were approved by Medicare offered eligible beneficiaries Medicare Advantage Plans which combined coverage for items and services traditionally covered under Parts A and B into a single insurance plan.

4.    To obtain payment for treatment or services provided to a beneficiary enrolled in a Medicare Advantage Plan administered through a Contractor, health care providers had to submit itemized claims forms to the Contractor.  Rather than reimbursing for each individual claim submitted by providers to the Contractor, CMS provided fixed, monthly payments for each beneficiary enrolled in

a Medicare Advantage Plan administered by the Contractor.  These monthly payments were referred to as "capitation" payments.

B.    New York Managed Medicaid Plans

5.    The New York State Medicaid Program ("Medicaid") was a federal and state health care program providing benefits to individuals and families who met specified financial and other eligibility requirements and certain other individuals who lacked adequate resources to pay for medical care.  CMS was responsible for overseeing the Medicaid program in participating states, including New York.  Individuals who received benefits under Medicaid were similarly referred to as "beneficiaries."

6.    The Medicaid program in New York State offered a managed care delivery system for Medicaid benefits to eligible beneficiaries.  The system was called Medicaid Managed Care.  Under Medicaid Managed Care, private entities called managed care organizations could agree to provide insurance plans covering most Medicaid benefits to eligible beneficiaries in exchange for monthly payments from the State of New York.

C.    The National Plan and Provider Enumeration System

7.    CMS developed the National Plan and Provider Enumeration System ("NPPES") to provide unique identifying numbers for health care providers.  When a health care provider registered with NPPES, it was given a unique National Provider Identifier

("NPI") number. Information for providers that received NPI numbers was contained in a publicly available database sometimes referred to as the "NPI Registry."

D.     Healthfirst New York

8.     Healthfirst New York ("Healthfirst") was a non-profit government-funded managed care organization with over 900,000 participating members. Healthfirst offered its members different types of government-sponsored insurance plans from which members could select, based on their individual eligibility. Each Healthfirst member was assigned a unique member identification number to facilitate the receipt of and payment for medical services and equipment under whichever insurance plan he or she selected.

9.     Healthfirst participated in Medicare Part C as a Contractor and offered eligible members the opportunity to enroll in Medicare Advantage Plans. The Medicare Advantage Plans offered and administered by Healthfirst were "health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

10.     Healthfirst also participated in New York's Medicaid Managed Care program and offered its eligible members the opportunity to enroll in its Medicaid Managed Care plans. The New York Medicaid Managed Care plans offered and administered by Healthfirst were

"health care benefit program[s]," as defined by Title 18, United States Code, Section 24(b).

11.  To manage the costs of administering both Medicare Advantage Plans and Medicaid Managed Care plans, Healthfirst developed and maintained a network of over 24,000 approved health care providers to which it directed its members for the provision of medical services and equipment.

E.  Healthfirst's Pre-Approval Process

12.  DME providers and other health care providers who were part of Healthfirst's approved network billed Healthfirst directly for the cost of any DME and related benefits, items, and services that were provided to individual members who were covered under either Medicare Advantage Plans or Medicaid Managed Care plans. To obtain payment for DME provided to a Healthfirst member enrolled in a Medicare Advantage Plan or Medicaid Managed Care plan administered by Healthfirst, a provider had to submit itemized claim forms to Healthfirst.

13.  Health care providers would submit claims to Healthfirst using a form that included, among other things, the beneficiary's name; the name, address, and Tax Identification Number of the DME provider; and the DME allegedly provided to the beneficiary.

14.   In certain situations, DME providers could request that Healthfirst pre-approve the submission of claims for reimbursement for DME provided to Healthfirst members, prior to any claim actually being submitted.   DME providers obtained the pre-approvals by placing telephone calls to Healthfirst operators and relaying certain information about the DME that had been or was to be provided to individual Healthfirst members.   Healthfirst operators would then give the DME providers an authorization code to reference on the claim form that was later submitted seeking reimbursement.   The authorization code was claim-specific, meaning that each claim for reimbursement associated with DME provided to a Healthfirst beneficiary had its own unique authorization code. DME providers referenced the authorization code in the reimbursement claim form that was subsequently submitted to Healthfirst for payment.

15.   To obtain an authorization code, DME providers were required to provide certain information to the Healthfirst operator, including, but not limited to, the following: (a) the member identification number of the Healthfirst member to which the DME was provided; (b) the name, telephone number, fax number, and Tax Identification Number of the DME provider; (c) the item code associated with the DME to be provided; and (d) the number of units of DME that was to be provided.   After this information was conveyed,

the Healthfirst operator would give the DME provider an authorization code that was to be referenced on the reimbursement claim form that the DME provider subsequently submitted to Healthfirst.

16.    If a reimbursement claim included a previously-issued authorization code, Healthfirst would issue the payment via check to the DME provider at the address listed on the reimbursement claim form or, in situations in which the provider had completed an electronic funds transfer ("EFT") authorization form with Healthfirst, via direct deposit to the bank account designated by the provider in the EFT agreement.

## II.   The Defendants

17.    The defendant CHIKWERE ONYEKWERE was the owner of Excellent Care Medical Supply LLC ("Excellent"), a DME company. Excellent was located at 885 Rutland Road, Brooklyn, New York within the Eastern District of New York.   Excellent registered with the NPPES on or about November 3, 2008.   CHIKWERE ONYEKWERE was identified in the NPI Registry as the "Authorized Official" for Excellent with his title identified as "Medical Supply Specialist."

18.    The defendant UCHECHI ONYEKWERE was CHIKWERE ONYEKWERE's sister.   UCHECHI ONYEKWERE was listed in the NPI Registry as the "Authorized Official" for an entity called Academy Medical Supply with her title identified as "President."   Academy Medical Supply registered with the NPPES on June 3, 2013.

III.  The Fraudulent Scheme

    A.    Scheme Overview

      19.  Beginning in approximately 2008 and continuing through December 2013, the defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, engaged in a fraudulent scheme in which they sought unlawfully to enrich themselves by submitting and causing the submission of fraudulent claims for reimbursement to Healthfirst for DME that was not in fact provided to Healthfirst members.

      20.  As part of the scheme, the defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, registered a series of purported DME vendors with the NPPES and obtained NPI numbers for them.  These vendors (the "Scheme Companies") were given names that were similar to, but different from, the names of approved DME providers in Healthfirst's network.  CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, also obtained Tax Identification Numbers from the IRS for the Scheme Companies and opened bank accounts in their names.

      21.  The defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, supplied mailing addresses for the Scheme Companies to the NPPES, the IRS, and banks.  The addresses provided for the Scheme Companies were usually mailboxes rented at UPS Store locations.  Sometimes the addresses provided were for

apartments at which CHIKWERE ONYEKWERE and other scheme participants resided.

22.   As part of the scheme, the defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, placed telephone calls to Healthfirst and pretended to be representatives of approved DME vendors in Healthfirst's network.  On these phone calls, the scheme participants used fake names and provided fake telephone numbers so as to avoid identifying themselves to the Healthfirst operators who took the calls.  When asked by the Healthfirst operators to identify the companies from which they were calling, the scheme participants gave the Tax Identification Numbers (and sometimes the names) of approved DME vendors in Healthfirst's network.

23.   The scheme participants then provided to the operators identifying information for Healthfirst members and described DME that they said had been ordered for the members from the companies they claimed to represent.  In response to this information, the Healthfirst operators supplied the scheme participants with authorization codes to use when submitting claim forms to Healthfirst for the DME identified on the calls as having been ordered for the Healthfirst members.

24.   The defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, then submitted claim forms to Healthfirst not on behalf of the approved DME vendors that they had identified in the calls, but rather in the names of the Scheme Companies.  The claim forms referenced the authorization codes that had been obtained on the phone calls made by the scheme participants, but directed that payment be made to the Scheme Companies.  The submitted claim forms also listed the Tax Identification Numbers for the Scheme Companies, which were different from the Tax Identification Numbers given by the callers to obtain the authorization codes referenced on the claim forms.

25.   Because the claim forms included valid authorization codes, Healthfirst's billing systems did not identify the discrepancies between the information provided on the telephone calls and the information contained on the submitted claim forms.

26.   As a result of the fraudulent scheme, Healthfirst (or its various corporate affiliates) issued payments to the Scheme Companies.  Sometimes these payments were in the form of checks that were mailed to the addresses identified on the claim forms (the same mailboxes at UPS Store locations or apartments at which the scheme participants resided that were registered with the NPPES and used to obtain Tax Identification Numbers and bank accounts).  Sometimes the payments were made by direct deposit into the bank accounts set

up for the Scheme Companies, if an Electronic Funds Transfer authorization form had been filed with Healthfirst.

27.   The defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, then withdrew in cash the funds from the bank accounts or used the funds to pay for personal expenses. The pieces of DME that had been described on the phone calls placed to obtain the authorization codes were not in fact provided to the Healthfirst members identified on the calls.   Further, in many cases, the Healthfirst members had no need for the identified DME that had been sought on their behalf.

28.   In total, during the time period identified above, the Scheme Companies submitted over $13 million in fraudulent claims for reimbursement of DME to Healthfirst.   Healthfirst paid out over $4 million in reimbursement of those claims.

B.   The Unauthorized Use of Individually Identifiable Health
     Information

29.   As part of the scheme, the defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, used and disclosed individually identifiable health information of Healthfirst members without the authorization or consent of the members.   Specifically, during the course of the scheme, CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE and others made phone calls to Healthfirst operators in which they used the member identification

numbers and dates of birth of Healthfirst members to obtain authorization codes to submit fraudulent claims for DME on behalf of the Scheme Companies.

30.   Sometimes, the defendant CHIKWERE ONYEKWERE enlisted other individuals, including individuals employed by his company Excellent, to make phone calls to Healthfirst to obtain authorization codes.   CHIKWERE ONYEKWERE compensated these individuals by writing checks to them that were drawn on the accounts of the Scheme Companies.

31.   When these individuals made calls to Healthfirst, they often sent emails to the defendant CHIKWERE ONYEKWERE listing Healthfirst members' names, dates of birth, and member identification numbers, as well as the authorization codes and the DME for which authorization had been granted to submit claims. CHIKWERE ONYEKWERE then used this information to submit claim forms to Healthfirst on behalf of the Scheme Companies.

32.   The Healthfirst members whose information was used to obtain authorization codes and was referenced in these emails did not authorize or consent to the use of their information in this manner.   Instead, the defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE, together with others, used the information unlawfully to further the fraudulent scheme.

C.   <u>The Academy Medical Supply Conspiracy</u>

33.   Between approximately June 2, 2013 and December 31, 2013, the defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE agreed to execute and executed a scheme that involved a purported company that they established called Academy Medical Supply ("Academy").   As part of the conspiracy, UCHECHI ONYEKWERE opened a bank account in the name of Academy; CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE also obtained an NPI Number and a Tax Identification Number for Academy.

34.   The defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE made phone calls to Healthfirst using fake names and phone numbers and claimed to represent another DME vendor with the word "Academy" in its title that was an approved member of Healthfirst's network.   CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE used the Tax Identification Number of the approved DME vendor to identify the entity on behalf of which they were purportedly calling.   CHIKWERE OYEKWERE and UCHECHI ONYEKWERE then obtained authorization codes from Healthfirst operators for the submission of claims for DME.

35.   The defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE then submitted or caused the submission of claim forms in the name of Academy to Healthfirst.   However, the DME identified in the reimbursement claim forms had not been provided to Healthfirst members.   The address provided on the claim forms submitted to

Healthfirst by Academy was a mailbox at a UPS Store location in Brooklyn, New York.

36.   In total, the defendants CHIKWERE ONYEKWERE and UCHECHI ONYEKWERE caused the submission of approximately $800,000 in claims to Healthfirst seeking reimbursement for DME purportedly provided to Healthfirst members by Academy.   Based on the submitted claim forms, Healthfirst mailed a check to Academy for approximately $57,000.   CHIKWERE ONYEKWERE attempted to deposit this check into the bank account opened by UCHECHI ONYKWERE in the name of Academy.

COUNT ONE
(Health Care Fraud Conspiracy)

37.   The allegations contained in paragraphs 1 through 36 are realleged and incorporated as if fully set forth in this paragraph.

38.   In or about and between January 2008 and December 2013, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants CHIKWERE ONYEKWERE and UCHECHI ONYEWERE, together with others, did knowingly and willfully conspire to execute a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: Medicare Advantage Plans and Medicaid Managed Care plans administered by Healthfirst, and to obtain, by means of materially false and fraudulent pretenses,

representations and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items and services, all contrary to Title 18, United States Code, Section 1347.

(Title 18, United States Code, Sections 1349 and 3551, et seq.)

## COUNTS TWO THROUGH NINE
### (Health Care Fraud)

39.   The allegations contained in paragraphs 1 through 36 are realleged and incorporated as if fully set forth in this paragraph.

40.   On or about the dates listed below, within the Eastern District of New York and elsewhere, the defendants identified below, together with others, did each knowingly and willfully execute and attempt to execute a scheme and artifice to defraud one or more health care benefit programs, as defined in Title 18, United States Code, Section 24(b), to wit: Medicare Advantage Plans and Medicaid Managed Care plans administered by Healthfirst, and to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with

the delivery of and payment for health care benefits, items and services, as set forth below:

| COUNT | DEFENDANT | SCHEME COMPANY IDENTIFIED ON CLAIM FORM | BENFICIARY | AUTHORIZATION CALL DATE | SUBMITTED CLAIM AMOUNT |
|---|---|---|---|---|---|
| TWO | CHIKWERE ONYEKWERE | Ultra Medical Equipment and Supplies; Ultra Med Equipments; and Ultra Medical | J.C., an individual whose identity is known to the Grand Jury | 2/1/2013 | $980 for each company |
| THREE | CHIKWERE ONYEKWERE | Ultra Medical Equipment and Supplies; Ultra Med Equipments; and Ultra Medical | P.S., an individual whose identity is known to the Grand Jury | 3/7/2013 | $1,850 for each company |
| FOUR | CHIKWERE ONYEKWERE | Academy Medical Supply | R.F., an individual whose identity is known to the Grand Jury | 6/5/2013 | $950 |
| FIVE | UCHECHI ONYEKWERE | Academy Medical Supply | H.B., an individual whose identity is known to the Grand Jury | 6/5/2013 | $900 |

| COUNT | DEFENDANT | SCHEME COMPANY IDENTIFIED ON CLAIM FORM | BENFICIARY | AUTHORIZATION CALL DATE | SUBMITTED CLAIM AMOUNT |
|-------|-----------|------------------------------------------|------------|--------------------------|-------------------------|
| SIX | CHIKWEREO NYEKWERE | Academy Medical Supply | L.V., an individual whose identity is known to the Grand Jury | 6/10/2013 | $1925 |
| SEVEN | CHIKWEREO NYEKWERE | Task Supply Comp Products | J.M., an individual whose identity is known to the Grand Jury | 9/23/2013 | $8,700 |
| EIGHT | CHIKWEREO NYEKWERE | MA Surgical Supplies and Prod | E.S., an individual whose identity is known to the Grand Jury | 9/25/2013 | $8,580 |
| NINE | CHIKWERE ONYEKWERE | Rainbow Supply | M.R., an individual whose identity is known to the Grand Jury | 12/19/2013 | $3,206.25 |

(Title 18, United States Code, Sections 2, 1347 and 3551

et seq.)

18

## COUNTS TEN THROUGH TWELVE
(HIPAA Violations)

41.   The allegations contained in paragraphs 1 through 36 are realleged and incorporated as if fully set forth in this paragraph.

42.   On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants identified below, together with others, knowingly and willfully used and caused to be used a unique health identifier and obtained and disclosed individually identifiable health information relating to an individual to another person under false pretenses and with the intent to sell, transfer, and use said individually identifiable health information for commercial advantage and personal gain, as set forth below:

| COUNT | DEFENDANT(S) | DATE OF USE OR DISCLOSURE | MEANS OF USE OR DISCLOSURE | INDIVDUALLY IDENTIFIABLE HEALTH INFORMATION |
|---|---|---|---|---|
| TEN | CHIKWERE ONYEKWERE | 2/7/2013 | Email to CHIKWERE ONYEKWERE | Healthfirst members' names, dates of birth, and member identification numbers |

| COUNT | DEFENDANT(S) | DATE OF USE OR DISCLOSURE | MEANS OF USE OR DISCLOSURE | INDIVDUALLY IDENTIFIABLE HEALTH INFORMATION |
|-------|-------------|---------------------------|----------------------------|---------------------------------------------|
| ELEVEN | CHIKWERE ONYEKWERE | 3/8/2013 | Email to CHIKWERE ONYEKWERE | Healthfirst members' names, dates of birth, and member identification numbers |
| TWELVE | CHIKWERE ONYEKWERE, UCHECHI ONYEKWERE | 6/9/2013 | Email from UCHECHI ONYEKWERE to CHIKWERE ONYEKWERE | Healthfirst members' names, dates of birth, and member identification numbers |

(Title 18, United States Code, Sections 2 and 3551 et seq.;

Title 42, United States Code, Section 1320d-6)

CRIMINAL FORFEITURE ALLEGATION
AS TO COUNTS ONE THROUGH NINE

43.   The United States hereby gives notice to the

defendants charged in Counts One through Nine that, upon their

conviction of any such offense, the government will seek forfeiture

in accordance with Title 18, United States Code, Section 982(a)(7),

which requires any person convicted of such offense to forfeit any

property, real and personal, that constitutes or is derived, directly

or indirectly, from gross proceeds traceable to the commission of

such offenses.

44.   If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p) to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 982(a)·(7); Title 21 United States Code, Section 853(p))

A TRUE BILL

FOREPERSON

LORETTA E. LYNCH
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

BY:
ACTING UNITED STATES ATTORNEY
PURSUANT TO 28 C.F.R. C.131

F. #2013R01395
FORM DBD-34
JUN. 85

No.

## UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

CHICKWERE ONYEKWERE and UCHECHI ONYEKWERE,

Defendants.

## INDICTMENT

(T. 18, U.S.C., §§ 982(a)(7), 1347, 1349, 2 and 3551 et seq.;
T. 21, U.S.C. § 853(p); T. 42, U.S.C., § 1320d-6)

A true bill.

_____
                        Foreperson

Filed in open court this _ _ _ day,

of _ _ _ _ _ _ _ A.D. 20 _ _ _ _ _ _ _

_____
                            Clerk

Bail, $ _ _ _ _ _ _ _ _ _ _ _

F. Turner Buford, Trial Attorney, and Peter W. Baldwin, Assistant U.S. Attorney